UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **UNITED STATES of AMERICA**  )<br>)<br>v.  )<br>)<br>**MUHAMED MUBAYYID,**  )<br>**EMADEDDIN Z. MUNTASSER, and**  )<br>**SAMIR AL-MONLA,**  )<br>)<br>**Defendants.**  )<br>) | **Criminal No.**<br>**05-40026-FDS** |

**MEMORANDUM ON DEFENDANT MUNTASSER'S
MOTION TO STRIKE OBJECTIONABLE MATERIAL AND
TO ENJOIN FURTHER MISREPRESENTATIONS**

**SAYLOR, J.**

This is a criminal prosecution under 18 U.S.C. § 371 (conspiracy to defraud the United States), 18 U.S.C. § 1001 (scheme to conceal material facts and false statements), 26 U.S.C. § 7206(1) (false statements on tax returns), and 26 U.S.C. § 7212(a) (obstructing and impeding the Internal Revenue Service). In essence, the indictments charge that defendants Muhamed Mubayyid, Emadeddin Z. Muntasser, and Samir Al-Monla fraudulently obtained a charitable exemption under § 501(c)(3) of the Internal Revenue Code for an entity known as Care International, Inc. According to the indictments, defendants concealed that Care International was an outgrowth of and successor to the Al-Kifah Refugee Center, and that Care International solicited and distributed funds for, and issued publications supporting and promoting, Islamic holy war ("jihad") and holy warriors ("mujahideen").

This case was tried to a jury in November and December 2007. On January 11, 2008, the

jury convicted the defendants of all but one of the charged counts. Defendants Mubayyid, Muntasser, and Al-Monla were each found guilty of participating in a scheme to conceal material facts (Count One) and of conspiring to defraud the United States (Count Two). Defendant Mubayyid was also found guilty of three counts of making a false statement on a tax return (Counts Three, Four, and Five) and of obstructing and impeding the Internal Revenue Service (Count Eight). Defendant Muntasser was also found guilty of making a false statement (Count 6). Defendant Al-Monla, however, was found not guilty of making a false statement (Count 7). Defendants are presently scheduled to be sentenced on May 14, 15, and 16, 2008.

On January 18, 2008, the Court issued a scheduling order that required, among other things, the government to produce a statement of offense conduct to the Probation Department for inclusion in the pre-sentence report. The government submitted a 42-page "Statement of Facts Pertaining to Defendant Emadeddin Muntasser" in response to that order. Defendant Muntasser has moved under seal to strike portions of that statement on the grounds that it misrepresents the facts and includes substantial material concerning terrorist activities that are unrelated to Muntasser or to the offenses for which he was convicted. Muntasser also seeks an order enjoining the government from making future public statements and court filings that characterize this case as a terrorism prosecution.

The Court denied the motion on March 26, 2008; this memorandum sets forth briefly the reasons for that denial.

    **A.**     <u>**Motion to Strike Objectionable Material**</u>

The preparation of a pre-sentence report is governed generally by 18 U.S.C. § 3552 and Fed. R. Crim. P. 32(c). Rule 32 requires the probation office, in most circumstances, to conduct a

presentence investigation and submit a report to the Court. *Id.* at 32(c)(1)(A). Parties have fourteen days in which to object to "material information, sentencing guideline ranges, and policy statements" contained in or omitted from the report. *Id.* At 32(f)(1).

In the District of Massachusetts, the typical practice is for the government to provide Probation with a "statement of offense conduct" that is incorporated, with or without further editing, into the pre-sentence report. Defendant here objects to the inclusion of various matters set forth in that submission, alleging in substance that the government has unfairly tied him to terrorism activities.

By statute, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. The government is therefore generally free to submit whatever information it thinks may be appropriate to Probation or the Court. If defendant believes the submission is objectionable, the normal practice is to file an objection setting forth the reasons. *See* U.S.S.G § 6A1.2(b). The Court must resolve the dispute, by evidentiary hearing if necessary, if the issue is relevant to the sentencing determination. U.S.S.G. § 6A1.3; Fed. R. Crim. P. 32(i)(3)(B); *United States v. Jimenez Martinez*, 83 F.3d 488, 494-95 (1st Cir. 1996). Defendant may also, of course, provide his own version of the offense conduct to Probation.

It is not, however, generally appropriate to strike the objectionable material, which would have the effect of depriving the Court of the opportunity to receive information concerning the government's view of the offense. While there may be instances where the government's conduct is so outrageous or objectionable that more drastic measures are required, this case does not

3

present such an issue. While defendant has raised issues as to his safety that may flow from being labeled as a "terrorist," those concerns are not sufficient, in this context, to bypass the normal sentencing process. Indeed, the Court cannot even evaluate defendant's concerns unless it has access to, and reviews, the relevant factual record. The Court further notes that pre-sentence reports are not public documents, which should substantially minimize defendant's concerns.

Accordingly, the Court declines to strike any portion of the government's statement of the offense conduct in this matter. The Court takes no position at this time as to the truth of the government's statements or their relevance to the sentencing decision in this case.

### B.     Motion to Enjoin Government Statements

Defendant further seeks an order enjoining the government from making future public statements and court filings concerning his alleged link to terrorism. This Court's power to impose a prior restraint on the speech of members of a coordinate branch of government is, to say the least, very slight. It is true that the Court has the power in a widely publicized or sensational criminal case to control extrajudicial statements by the parties in order to protect the rights of the accused to a fair trial. *See* D. Mass. Local Rule 83.2B. The trial of this case, however, concluded some time ago. The Court is aware of no authority, and defendant has cited none, permitting the imposition of a gag order or other prior restraint in order to preserve the right of the defendant to a fair sentencing, or to protect him from the publicity attendant to the sentencing process. While common sense and ordinary decency would strongly suggest that the government confine its statements to those made in the judicial process, that is a far cry from a court-ordered prior restraint. Furthermore, this Court is reasonably confident of its ability to view the evidence and the issues dispassionately, and without being unduly inflamed by the statements of counsel. The

request for a restraining order, at least on the present record, will therefore be denied.

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: April 2, 2008